UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | :<br>:<br>:    22-CV-_____ ( )<br>**Plaintiff,**    :<br>:<br>-against-    :    **COMPLAINT**<br>:<br>**RONALD D. PAUL**    :<br>:<br>:<br>:<br>**Defendant**    :<br>: |

---

Plaintiff Securities and Exchange Commission ("SEC"), for its Complaint against Defendant Ronald D. Paul ("Paul") alleges as follows:

## SUMMARY

1. This matter concerns material misstatements and omissions by Eagle Bancorp, Inc. ("Eagle"), a Bethesda, Maryland-based bank holding company, and its former Chairman and CEO, Paul, about related party loans extended by Eagle's principal subsidiary, EagleBank, to family trusts affiliated with Paul.

2. From March 2015 through April 2018, Eagle failed to include these loans in the related party loan balances disclosed in its annual reports and proxy statements filed with the SEC. Paul signed the annual reports and solicited the proxy statements. Both SEC regulations and U.S. Generally Accepted Accounting Principles ("GAAP") in effect during the relevant period required Eagle to disclose material related party transactions. Adequate disclosure of related party transactions is essential to enable investors to evaluate an issuer's corporate governance.

1

3. In December 2017, a short seller released a report that alleged, among other things, that Eagle had significant undisclosed related party loans. Eagle publicly asserted that those loans were not related party loans and that Eagle had complied with all related party loan requirements. Contrary to these statements, certain loans, which should have been disclosed as related party loans by Eagle, were not.

4. In its 2017 annual report, filed with the SEC on March 1, 2018 and signed by Paul, Eagle negligently omitted the loans to Paul's family trusts from its related party loan balances. While Eagle did disclose in that report the existence of loans to an unspecified trust "established by an executive officer and director," it stated that those loans were not related party loans when in fact they were. In its proxy statement filed April 3, 2018 and solicited by Paul, Eagle repeated these inaccurate disclosures.

5. In its 2018 annual report, filed with the SEC on March 1, 2019, Eagle finally disclosed the loans to Paul's family trusts in its related party loan balances, and also reported other, previously-undisclosed related party loans to Eagle directors and their families.

6. As a result, Eagle revised and increased its related party loan balances to $238 million as of December 31, 2017, from a previously-reported balance of $61 million, and $138 million as of December 31, 2016, from a previously-reported balance of $53 million. This increase resulted primarily from inclusion of the loans to Paul's family trusts—approximately $90 million as of December 31, 2017 and $73 million as of December 31, 2016.

7. In acting in his corporate capacity as CEO, Chairman and President of Eagle, Paul negligently failed to ensure that Eagle properly disclosed these related party loans in its filings and statements. Moreover, Eagle failed to maintain the appropriate internal processes to prevent such a disclosure failure. In his senior position at Eagle, Paul was also liable for these failures.

8. By engaging in the conduct described herein, Paul violated, and unless restrained or enjoined by the Court, will continue to violate Sections 17(a)(2) and/or 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(2) and (3)], Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78n(a)] and Rules 13a-14 and 14a-9 thereunder [17 C.F.R. §§ 240.13a-14 and 14a-9]. The SEC therefore seeks a judgment against Paul providing permanent injunctive relief, ordering disgorgement, plus prejudgment interest, and civil money penalties, and barring Paul from serving as an officer or director of a public company for two years.

## JURISDICTION AND VENUE

9. The SEC brings this action, and this Court has jurisdiction, pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa].

10. Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78(e), and 78aa].

11. Paul's conduct took place in connection with the offer and/or sale of Eagle securities. During the relevant period, Eagle's common stock was publicly traded on the NASDAQ stock exchange, located in the Southern District of New York. In addition, during the relevant period, Paul met with Eagle investors and analysts in this district.

12. Paul, directly or indirectly, made use of means or instrumentalities of interstate commerce or the mails, or the facilities of a national securities exchange, in connection with the conduct alleged herein.

**DEFENDANT**

13. **Paul**, age 66, resides in Potomac, Maryland. A founder of EagleBank, Paul served as the President and CEO of Eagle from its organization in 1997 until his retirement in March 2019, and Chairman of the Board of Directors of Eagle from May 2008 until March 2019. Paul also served as Chairman of the Board of Directors of EagleBank from its inception to March 2019, and CEO of EagleBank from June 2006 to March 2019.

**OTHER RELEVANT ENTITIES**

14. **Eagle**, a Maryland corporation with its principal place of business in Bethesda, Maryland, is a bank holding company for EagleBank. Shares of Eagle's common stock are registered with the SEC pursuant to Section 12(b) of the Exchange Act and trade on the NASDAQ Capital Market under the ticker symbol "EGBN." During the relevant period, Eagle sold securities to the public pursuant to registration statements filed with the SEC.

**FACTUAL ALLEGATIONS**

**I.   EAGLE'S RELATED PARTY LOAN DISCLOSURES**

15. FASB Accounting Standards Codification Topic 850, "Related Party Disclosures" ("ASC 850") requires companies to disclose in their financial statements material related party transactions. Related parties include management, directors, and their immediate family members, and "other parties that can significantly influence the management or operating policies of the transacting parties or that have an ownership interest in one of the transacting parties and can significantly influence the other to an extent that one or more of the transacting parties might be prevented from fully pursuing its own separate interests."

16. Rule 9-03 of Regulation S-X ("Rule 9-03") requires bank holding companies to disclose the aggregate dollar amount of loans exceeding $60,000 made to directors, executive officers or shareholders or to any associates of such persons, as long as the aggregate amount of

such loans exceeds 5% of shareholders' equity. "Associate" includes immediate family members, entities in which such person has at least 10% ownership, and trusts "for which such person serves as trustee or in a similar capacity."

17. Before March 2019, Eagle's related party loan disclosures were not in accordance with GAAP or Rule 9-03. The related party loan balances in Eagle's financial statements and proxy statements did not include loans that EagleBank extended to a trust established by Paul for the benefit of his daughters, a trust established by Paul for the benefit of his siblings, nieces, and nephews ("Trusts"), and entities in which the Trusts had a 10% or greater ownership interest ("Trust Loans").

18. The Trust Loans were related party loans under ASC 850, and the Trust Loans were required to be disclosed under Rule 9-03.

## II. EAGLE FAILED TO PROPERLY CLASSIFY THE LOANS AS RELATED PARTY TRANSACTIONS

19. Before March 2019, Eagle identified and reported related party loans in its annual reports and proxy statements using the list of loans it classified as subject to Federal Reserve Regulation O. Regulation O governs loans to a bank's executive officers, directors, and principal shareholders, and any entity controlled by such person, including any entity over which any such person has "the power to exercise a controlling influence over the management or policies." 12 C.F.R § 215.

20. Prior to March 2019, Eagle had no separate process for identifying and reporting related party loans under ASC 850 and Rule 9-03. Instead, Eagle only analyzed whether loans met the definition of Regulation O. Nevertheless, under any of these rules, Eagle should have classified the Trust Loans as related party loans.

21. Eagle did not classify the Trust Loans as Regulation O loans, and also omitted the Trust Loans from the related party loan balances in its annual reports and proxy statements filed with the Commission in 2015 through 2017.

22. Each year, Paul signed a management representation letter to Eagle's independent auditor, stating that Eagle had made available "the names of all related parties and all relationships and transactions with related parties."

### III. EAGLE NEGLIGENTLY FAILED TO PROPERLY DISCLOSE ITS RELATED PARTY LOAN BALANCE IN ANNUAL REPORTS AND PROXY STATEMENTS FILED IN 2015-2017

23. Eagle's failure to include the Trust Loans in the total balances of related party loans was in contravention of GAAP and Rule 9-03, and rendered its disclosures misleading by understating the total balances of Eagle's loans to related parties.

24. In its 2014 annual report, filed on March 2, 2015, Eagle reported total related party loan balances of $17.1 million as of December 31, 2014. In doing so, Eagle failed to include approximately $24.8 million of Trust Loans.

25. In its 2015 annual report, filed on February 29, 2016, and its 2016 proxy statement filed on April 1, 2016, Eagle reported total related party loans balances of $29.9 million as of December 31, 2015. In doing so, Eagle failed to include approximately $37.3 million of Trust Loans.

26. In its 2016 annual report, filed on March 1, 2017, and its 2017 proxy statement filed on April 3, 2017, Eagle reported total related party loan balances of $52.6 million as of December 31, 2016. In doing so, Eagle failed to include approximately $72.7 million of Trust Loans.

27. Paul was a member of Eagle's Disclosure Controls Committee, which approved each annual report and proxy statement filed with the SEC. Paul signed each of the annual reports, and the accompanying certifications required under the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"). Paul solicited the proxy statements during the relevant period.

## IV. THE DECEMBER 2017 SHORT SELLER REPORT

28. On December 1, 2017, a short-selling research firm published a report alleging, among other things, that Eagle had failed to properly disclose its related party loan balance. This report publicly raised the issue of Eagle's related party loan balances.

29. Following the release of the report, Eagle's stock price dropped by more than 24%, to close at $49.95 on December 1, 2017, from a $66.15 closing price the prior trading day.

30. On the same day that the short seller's report was published and after the market was closed, Eagle issued a press release, which Paul reviewed and approved, subsequently filed with the Commission on Form 8-K, titled, "Eagle Bancorp, Inc. Denies Allegations In Deceptive and Misleading Report." Among other things, the press release claimed that Eagle had properly disclosed its related party loans balance.

31. Two days later, on Sunday, December 3, 2017, Eagle issued another press release, which Paul reviewed and approved, and subsequently filed with the Commission on Form 8-K. This release was entitled "Eagle Bancorp Rebuts Claims of Internal Control Weaknesses and Alerts Shareholders and Customers to be Wary of Unscrupulous Short Seller Tactics." Among other things, this press release claimed that Eagle's related party loan balance had been properly disclosed and that Eagle complied with all disclosure and internal controls requirements regarding related party loan balances.

32. Numerous investors and analysts contacted Eagle to inquire as to the accuracy of the allegations in the report. Among other things, they asked about the amount of Eagle's Regulation O or related party loans and whether the Trust Loans should be classified as such. Eagle asserted that its related party loan disclosures were complete.

33. For the reasons described above in Section III, contrary to the representations that Eagle made to investors and analysts after the short seller report was issued, Eagle's related party loan disclosures from 2015 through 2017 were inaccurate and misleading.

34. Eagle's failure to include the Trust Loans in the total balances of related party loans was in contravention of GAAP and Rule 9-03, and rendered its disclosures from 2015-2017 misleading by understating the total balances of Eagle's loans to related parties. Paul, as Eagle's CEO, Chairman, and President had a fiduciary duty to Eagle and its shareholders to ensure that Eagle properly disclosed its related party loan balance. He negligently failed to do so.

## V. EAGLE'S 2017 ANNUAL REPORT AND 2018 PROXY STATEMENT CONTAINED MATERIAL MISSTATEMENTS AND OMISSIONS

35. In its 2017 annual report, filed on March 1, 2018, Eagle reported total related party loan balances at December 31, 2017 of $60.9 million. Eagle should have included, but did not include, approximately $89.6 million of Trust Loans.

36. In a paragraph below the related party loan balances, Eagle stated:

> The Bank has made an aggregate of $4.0 million of loans to a trust with an independent third party trustee, established by an executive officer and director, of which the children of such executive officer and director are discretionary beneficiaries, and over which such individuals have no investment or operational authority, and an aggregate of $65.6 million of loans to entities in which the trust has an ownership interest in excess of 10%, which the Company *does not consider to be related party transactions*. (emphasis added)

37. This description was inaccurate because the Trust Loans were related party transactions. Paul signed Eagle's 2017 10-K and the accompanying Sarbanes-Oxley certification.

38. On March 2, 2018, the day after Eagle filed its 2017 annual report, Eagle began treating at least some of the Trust Loans as related party loans in its internal systems. Despite this internal reclassification of the Trust Loans as related party loans, Eagle's 2018 proxy statement, filed on April 3, 2018, and solicited by Paul, did not disclose the Trust Loans as such to the investing public.

## VI. IN ITS 2018 ANNUAL REPORT, EAGLE DISCLOSED REVISED RELATED PARTY LOAN BALANCES

39. Before filing its 2018 annual report, Eagle developed a new, enhanced process to identify and disclose all related party transactions in its financial statements and filings with the SEC. This process no longer relied exclusively on Regulation O, but was designed to identify related party transactions under all applicable rules, including ASC 850 and Rule 9-03. As a result of this improved process, Eagle identified additional related party loans, including loans to an entity in which a director was a trustee, loans to an entity in which a director had an ownership interest exceeding 10%, and loans to an entity in which a director's son had an ownership interest exceeding 10%.

40. In its 2018 annual report, filed on March 1, 2019, Eagle included the Trust Loans, as well as other loans identified as a result of its process improvements, in its related party loan balances. Eagle disclosed an increase in the outstanding reported related party loan balances to $238 million as of December 31, 2017, from a previously-reported balance of $61 million, and to $138 million as of December 31, 2016, from a previously-reported balance of $53 million.

41.     The increase in Eagle's related party loan balances resulted primarily from inclusion of the Trust Loan balances—approximately $90 million as of December 31, 2017 and $73 million as of December 31, 2016.

42.     During the relevant period, Eagle's books and records understated its related party loan balances for the reasons discussed above.  As such, Eagle's internal controls were insufficient to prevent these misstatements regarding related party loan balances.  As CEO, President, and Chairman of Eagle, it was Paul's responsibility to ensure such controls were in place.  In this case, any controls in place to prevent an improper or incomplete disclosure of related party loans failed.

**VII.    PAUL'S STOCK SALES IN THE RELEVANT PERIOD**

43.     Between October 25, 2017 and November 3, 2017, Paul sold 50,000 shares of Eagle stock at an average price of $67.13 per share, for total proceeds of approximately $3.35 million.

**FIRST CLAIM FOR RELIEF**
**Violations of Sections 17(a)(2) and/or 17(a)(3) of the Securities Act**

44.     The SEC realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 43, as if fully set forth herein.

45.     By engaging in the conduct described above, Defendant Paul, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails has: (2) obtained money or property by means of untrue statements of a material fact or omissions of a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; and/or (3) engaged in transactions,

practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities upon other persons.

46. By engaging in the foregoing, Defendant Paul violated, and unless restrained and enjoined, will continue violating Sections 17(a)(2) and/or 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

<b><u>SECOND CLAIM FOR RELIEF</u></b><br><b>Violations of Sections 14(a) and Rule 14a-9 of the Exchange Act</b>

47. The SEC realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 43, as if fully set forth herein.

48. By engaging in the conduct described above, Defendant Paul directly or indirectly, by use of mails, or the means or instrumentalities of interstate commerce or any facility of a national securities exchange, or otherwise, in contravention of Rule 14a-9 of the Exchange Act, solicited or permitted the use of their names to solicit proxies, consents, or authorizations in respect of non-exempt securities registered with the SEC pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], by means of a proxy statement, form of proxy statement, notice of meeting and other communications that contained statements, which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts or which omitted to state material facts necessary in order to make the statements made therein not false or misleading or necessary to correct statements in earlier communications with respect to the solicitation of a proxy for the same meeting or subject matter which became false or misleading.

49. By engaging in the foregoing conduct, Paul violated and, unless restrained and enjoined, will continue violating Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9].

## THIRD CLAIM FOR RELIEF
### Violations of Rule 13a-14 of the Exchange Act

50. The SEC realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 43, as if fully set forth herein.

51. Rule 13a-14 of the Exchange Act [17 C.F.R. §240.13a-14] requires that each principal officer of an issuer, at the time of the filing of a report, must sign a certification averring, among other things, that the report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which statements were made not misleading with respect to the period covered by this report, and as to the company's controls over financial reporting.

52. As a principal officer of Eagle, Defendant Paul signed certifications included in Eagle's annual reports filed on Form 10-K for the years ending December 31, 2014, December 31, 2015, December 31, 2016, and December 31, 2017. These certifications were materially false and misleading.

53. By engaging in the foregoing conduct, Defendant Paul violated and, unless restrained and enjoined, will continue violating Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court enter a Final Judgment:

a) finding the Defendant violated the federal securities laws and rules promulgated thereunder as alleged against him herein in this Complaint;

b) permanently restraining and enjoining the Defendant and his agents, servants, employees and attorneys and all persons in active concert who receive actual notice

of the injunction and each of them from, directly or indirectly, violating or aiding and abetting violations of the federal securities laws alleged in this Complaint;

c) ordering the Defendant to pay disgorgement of certain amounts and to pay prejudgment interest on those amounts;

d) ordering the Defendant to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

e) barring the Defendant from acting as an officer or director of any public company for a period of two years pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and

f) granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

By: /s/ Derek Bentsen
    Derek Bentsen (DB8369)
    Securities and Exchange Commission
    100 F St. NE
    Washington, D.C. 20549
    Phone: (202) 551-6426

Of Counsel:
Frederick L. Block / (202) 551-4919
James M. Carlson / (202) 551-3711
Kevin Guerrero / (202) 551-4401
Emily Shea / (202) 551-8626
Securities and Exchange Commission
100 F St. NE
Washington, D.C. 20549

Dated: August 16, 2022